**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**TRAVIS WHITE**                                                                                                   **PLAINTIFF**

**V.**                                                                            **CIVIL ACTION NO. 5:05cv165-MTP**

**UNKNOWN COLLINS, et al.**                                                                      **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

THIS MATTER is before the court on the Motion for Summary Judgment [71] and

Supplemental Motion for Summary Judgment [94] filed by Defendants, and *sua sponte* for

evaluation pursuant to 28 U.S.C. § 1915(e)(2).[1]   The court, having considered the submissions of

the parties and the applicable law, finds that the Motions should be GRANTED and that the

claims against Defendants should be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff, Travis White, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1]

pursuant to 42 U.S.C. § 1983 on August 29, 2005.  Plaintiff is currently incarcerated in Marshall

County Correctional Facility, serving a life sentence for homicide.  Through his complaint and

amended complaints, and as clarified during his *Spears*[2] hearing, Plaintiff asserts claims for

excessive force, denial of adequate medical care, denial of access to the courts, and property

deprivation.  *See* Scheduling and Case Management Order [66].  The events in Plaintiff's

complaints allegedly occurred while Plaintiff was incarcerated in the Wilkinson County

---

[1] The plaintiff is proceeding *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).  Plaintiff's *Spears* hearing occurred on
September 25, 2007.  The transcript from Plaintiff's *Spears* hearing is cited herein as "Tr. __."
*See* Ex. C to Motion [71-4].

Correctional Facility ("WCCF").

In his complaints, Plaintiff named the following Defendants: Christopher Epps, CCA Board of Directors, Warden Unknown Waller, Warden Unknown Ellis, Warden Unknown Jackson, Chief Unknown Walker, Unknown Collins, Unknown Griffin, Unknown Singleton, Unknown McDonald, Officer Unknown Rice, Officer Unknown Williams, Officer Unknown Lewis, and Emmit Sparkman. The following Defendants were dismissed by Order [13] dated January 4, 2006: Christopher Epps, CCA Board of Directors, Warden Unknown Waller, Warden Unknown Ellis, Warden Unknown Jackson, Chief Unknown Walker, Unknown McDonald, and Emmit Sparkman. Officer Unknown Singleton was never properly served with process and is not before the court.[3] *See* Return Summons [16] [79]. Accordingly, the remaining Defendants before the court are Unknown Collins, Unknown Griffin, Unknown Rice, Unknown Williams, and Unknown Lewis.

Plaintiff alleges that on or about February 12, 2003, he was sprayed with excessive amounts of pepper spray and "violently assaulted." *See* Complaint [1] at 4. The incident occurred when Defendants attempted to move Plaintiff from a single cell to a cell with another inmate. Plaintiff claims that he objected to the proposed cell-mate because he was a known "troublemaker." (Tr. 10-11.) Plaintiff asked the Defendants for another cell-mate, and they refused. He told them he did not want to be in the cell with the other inmate.

---

[3]Because Officer Unknown Singleton was never properly served with process, and more than 120 days have passed since Plaintiff filed his complaint, Officer Unknown Singleton may be dismissed from this action without prejudice pursuant to Federal Rule of Civil Procedure 4(m). *See* Fed. R. Civ. P. 4(m). However, as discussed herein, because Plaintiff's claims against the named Defendants do not amount to a constitutional violation, dismissal with prejudice is appropriate as to all parties, including Officer Singleton.

Plaintiff claims that Defendants told him that if he did not back up to be restrained, they would spray him with pepper spray.  Plaintiff's testimony reflects that he again asked to be put in a cell with another cell-mate, and the Defendants sprayed him with pepper spray.  Plaintiff testified, "And when I still refused, they sprayed me again." (Tr. 12.)  Defendants allegedly sprayed Plaintiff with excessive amounts pepper spray and when Plaintiff still refused to come to the "tray hole"[4] to be restrained, Defendants came into his cell to restrain him.  Plaintiff claims that Defendants "snatched [him] off [his] rack, got [him] on the floor, handcuffed and shackled [him], and then . . . began to beat [him] up." (Tr. 12-13).

On November 13, 2007, Defendants Collins and Griffin filed their Motion for Summary Judgment [71].  On March 10, 2008, Defendants Rice, Williams, and Lewis joined in the motion for summary judgment.  *See* Answer and Joinder [83].  On May 7, 2008, Defendants filed a Supplemental Motion for Summary Judgment [94] based on the discovery of the videotape of the events surrounding Plaintiff's cell extraction on February 12, 2003.  The search for the video was conducted pursuant to Plaintiff's request; indeed, Plaintiff filed a motion to compel the production of the videotape so that he could "better answer the Defendant's motion for summary judgment."  *See* Memorandum [78] in Support of Motion to Compel [77] at 11.  Plaintiff has viewed the videotape of the incident and has filed several pleadings opposing Defendants' motions for summary judgment.  *See* Order [99]; Responses [92] [96] [97] [98] [100] [102].

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most

---

[4]The "tray hole" is apparently a slot in the cell door where an inmate's food tray is passed through, and where the inmate places his hands in order to be handcuffed.

favorable to Plaintiff, Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

Additionally, because Plaintiff is proceeding *in forma pauperis* in this action, his complaint is subject to *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2), which mandates dismissal "at any time" if the court determines that the action "fails to state a claim on which

4

relief may be granted" or "is frivolous or malicious."  *See also Ali v. Higgs,* 892 F.2d 438, 440

(5th Cir. 1990) (recognizing the court's authority "to test the proceeding" and deeming

appropriate *sua sponte* evaluation of the merit of the asserted claim).  "A complaint is frivolous if

it lacks an arguable basis in law or in fact."  *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir.

1995).  This court is "vested with especially broad discretion in making the determination of

whether an IFP proceeding is frivolous."  *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir.

1986).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983.  However, Section

1983  "neither provides a general remedy for the alleged torts of state officials nor opens the

federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the

state or its officers."  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).  Rather, "[i]t affords a

remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or

immunities secured by the Constitution and laws' of the United States."  *White*, 660 F.2d at 683

(quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior*

liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*,

828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials

cannot be held liable for the actions of subordinates under any theory of vicarious liability.").

"To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants'

participation in the alleged wrong, specifying the personal involvement of each defendant."  *Jolly*

*v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292

(5th Cir. 1992)).  Thus, supervisory prison officials may be held liable for a Section 1983

violation only if they either were personally involved in the constitutional deprivation or if there

is a "sufficient causal connection between the supervisor's wrongful conduct and the

constitutional violation."  *Thompkins*, 828 F.2d at 304.

    <u>Excessive Force</u>

    Plaintiff alleges that on or about February 12, 2003, he was sprayed with excessive

amounts of pepper spray and "violently assaulted," as described in detail above.   Plaintiff alleges

that Defendants' actions constitute excessive force in violation of the Eighth Amendment.

    When prison officials are accused of using excessive force in violation of the Eighth

Amendment, "the *core judicial inquiry* is . . . whether force was applied *in a good-faith effort to*

*maintain or restore discipline*, *or maliciously and sadistically to cause harm.*"  *Baldwin v.*

*Stalder*, 137 F.3d 836, 838 (5th Cir. 1998) (quoting *Hudson,* 503 U.S. at 7).  The Eighth

Amendment's "prohibition of cruel and unusual punishments necessarily excludes from

constitutional recognition *de minimis* uses of physical force, provided that the use of force is not

of a sort repugnant to the conscience of mankind."  *See Copeland v. Nunan*, 250 F.3d 743, No.

00-20063, 2001 WL 274738, at *2 (5th Cir. Feb. 21, 2001) (quoting *Hudson v. McMillian*, 503

U.S. 1 (1992)) (internal quotations and citations omitted).  Some of the relevant objective factors

in the inquiry of the application of excessive force include: "1) the extent of the injury suffered;

2) the need for the application of force; 3) the relationship between the need and the amount of

force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts

made to temper the severity of the forceful response."  *Baldwin*, 137 F.3d at 838-39 (internal

citations omitted).

In support of their Supplemental Motion for Summary Judgment [94], Defendants submitted a video of Plaintiff's cell extraction on February 12, 2003.  *See* Ex. E to Defendants' Motion for Summary Judgment [94].  The Supreme Court recently held that in ruling on a defendant's motion for summary judgment in an excessive force case, the court of appeals "should have viewed the facts in the light depicted by the videotape," which completely discredited plaintiff's version of the events.  *See Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). The Fifth Circuit and several other jurisdictions have made similar findings.  *See Barnes v. McCree*, No. 07-10398, 2008 WL 1743890, at *1 (5th Cir. April 14, 2008) (holding that the videotape of the alleged excessive force incident submitted by defendants demonstrates that plaintiff's "claims have no basis in fact or law and are therefore frivolous"); *see also Stanley v. Hejirika*,134 F.3d 629, 635 (4th Cir. 1998) (holding that videotape of alleged excessive force incident "reveal[ed] no evidence of malicious or sadistic conduct"); *El v. Ordiway*, 198 F.3d 244, 1999 WL 993891, at *1 (6th Cir. Oct. 20, 1999) (holding that videotape of alleged excessive force incident supported defendants' claim that they were forced to physically restrain plaintiff because he refused to obey orders);[5] *Allaway v. McGinnis*, 473 F. Supp. 2d . 378, 382 (W.D. N.Y. 2007) (holding that defendants were entitled to summary judgment based on videotape of excessive force incident; the prisoner's "own refusal to come out of his exercise pen necessitated the use of some force, and that force was used only after plaintiff ignored repeated pleas to come out 'the easy way'").

---

[5]The facts of *El v. Ordiway* are very similar to the case at bar.  In *Ordiway*, the prisoner refused to come out of his cell to be restrained, so chemical agents were sprayed into his cell. *Ordiway*, 1999 WL 993891, at *1.  A restraint team then entered his cell and restrained him.  *Id.* The Sixth Circuit held that the videotape revealed that the defendants acted reasonably under the circumstances.  *Id.*

As shown in the video, Unit Manager Douglas Griffin ordered Plaintiff to come to the tray hole to be restrained so the jail officials could move Plaintiff to another cell. After refusing several orders to come to the tray hole to be restrained, Defendants administered pepper spray into Plaintiff's cell. Plaintiff continued to refuse to come to the tray hole to be restrained, and sat on his bunk with a towel or shirt over his face. Several times, Plaintiff actually dipped the towel in his toilet water and rinsed off his face.

At any time during the almost forty-minute interval of Defendants' efforts to get Plaintiff to cooperate with the transfer without the use of force, Plaintiff could have voluntarily come to the tray hole to be restrained. Instead, he chose to refuse the officials' orders and sat on his bunk with his face covered. At one instance, Plaintiff came to the door and yelled profanity at the Defendants; at another time, he came to the door and demanded the name of his proposed cell-mate.

After giving the final order for Plaintiff to come to the tray hole to be restrained, Defendant Griffin ordered a five-man extraction team into Plaintiff's cell to restrain and extract him. As shown on the video, the team entered the cell, grabbed Plaintiff from his bunk, forced him to the floor, and restrained him. Defendant Griffin ordered Plaintiff to "stop resisting" so the officers could cuff him. One of the officers indicated that he was having trouble restraining Plaintiff because he was grabbing the cuffs. The Defendants then lifted Plaintiff to his feet and escorted him out of his cell. *See* Ex. E to Defendants' Motion for Summary Judgment [94].

The video reveals absolutely no evidence of kicking, punching, or excessive force of any type. Plaintiff's allegations that Defendants repeatedly punched him in the face and gouged him

in the eye after he was restrained are discredited by the video.  Further, Plaintiff's claim that he was not resisting conflicts with his admission in a recent pleading that he refused to be restrained.  *See* Plaintiff's Response [100] at 2 ("Plaintiff refused to be restrained due to the fact that defendants Collins and Griffin attempted to put Plaintiff in a dangerous situation with a known trouble maker who not only posed a serious bodily threat to this Plaintiff's well being but also to where this Plaintiff would be subject to the caustic chemicals that some of these defendants and other officers at WCCF use daily on that particular inmate.").  It is clear that Defendants' actions were "applied in a good-faith effort to maintain or restore discipline," and not performed "maliciously and sadistically to cause harm."  *See Baldwin*, 137 F.3d at 838.

It is not surprising that Plaintiff received some red-marks and abrasions from the extraction; indeed, one of the officers also received some scratches and abrasions as a result of the team's efforts to restrain Plaintiff.  *See* Ex. D to Motion [71-5] at 21-22.  However, Plaintiff could have avoided the whole incident had he cooperated with the officials and obeyed their orders come to the tray hole to be restrained.  Plaintiff's red marks and abrasions, caused Plaintiff's own decision to disobey orders, are *de minimis* injuries, and do not amount to a constitutional violation.  *See Siglar v. Hightower*,  112 F.3d 191, 193-94 (5th Cir. 1997) (affirming dismissal of prisoner's excessive force claim, holding that prisoner's sore bruised ear was *de minimis* injury); *Lee v. Wilson*, 237 Fed. Appx. 965, 2007 WL 2141956, at *1 (5th Cir. July 26, 2007) (affirming dismissal of prisoner's excessive force claim, holding that prisoner's busted lip was *de minimis* injury).  Indeed, the video of Plaintiff being escorted out of his cell only reveals a red mark on Plaintiff's back, and the video of Plaintiff being escorted to his new cell after the alleged excessive force and the alleged denial of medical treatment reveals that

Plaintiff had no visible injuries, much less something more than *de minimis* injuries.  *See* Ex. E to Defendants' Motion for Summary Judgment [94].

Plaintiff was afforded the opportunity to view the video and file a supplemental response to Defendants' motion for summary judgment.  *See* Order [99]; Response [102]; Reply [101].  In his Supplemental Response [102], Plaintiff claims that there are several "discrepancies" in the video and the actual event.  He claims that the video was not started until after he was sprayed with pepper spray the first time, and disputes the number of times Defendants sprayed the pepper spray into his cell.  Plaintiff also claims that the occurrence where he was "held in the air by Defendants Singleton and Rice while they punched [him] in the face" is missing from the video, and that the video has been "edited and altered in some way."  Supplemental Response [102] at 3.  Plaintiff also complains that the video does not show the alleged medical treatment or lack thereof.

Plaintiff's claim that Defendants sprayed him with pepper spray more times than they admit does not raise a genuine issue of material fact as to whether Defendants applied excessive force.  The record establishes that Defendants' actions were "applied in a good-faith effort to maintain or restore discipline" *after* Plaintiff refused several orders to come to the tray hole and be restrained.  *See Baldwin*, 137 F.3d at 838.  Further, Plaintiff's claim that the video was somehow altered is without merit.  The video does in fact reveal a brief period where Plaintiff is held in the air while Defendants are attempting to lift him from the ground to his feet; however, there is no evidence that any Defendant punched or kicked him.  Finally, Plaintiff's complaint that the video does not show the alleged medical treatment or lack thereof, does not establish that the video was altered.  Indeed, Unit Manager Griffin states "at this time, we will pause the tape

so Inmate White can be examined by medical." *See* Ex. E to Defendants' Motion for Summary Judgment [94].

The record reflects that Plaintiff's injuries were *de minimis,* the application of some force was necessary since Plaintiff refused several orders to come to the tray hole to be restrained, the relationship between the need and the amount of force used was reasonable, and the Defendants reasonably perceived that Plaintiff was a possible threat.[6]  *See supra, Baldwin*, 137 F.3d at 838-39 (discussing relevant objective factors to consider in evaluating an excessive force claim). Accordingly, Plaintiff has failed to establish that Defendants maliciously and sadistically applied excessive force in violation of the Eighth Amendment.  The record establishes that Defendants applied minimal and reasonable force in a good faith effort to maintain and restore discipline. *See Baldwin*, 137 F.3d at 838.  This claim will be dismissed as frivolous.

<u>Denial of Adequate Medical Care</u>

Plaintiff alleges that after he was extracted from his cell, the officers took pictures of him and a nurse documented his wounds and bruises.  He claims that Officers Collins and Griffin refused to let the nurse rinse his eyes or give him any type of medical treatment.  (Tr. 21-22.)  He claims that his eye was bleeding from where Officer Singleton gouged his eye, his mouth was busted, and his eye was swollen.  (Tr. 22.)  He also alleges that they refused to give him Tylenol.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing

---

[6]It was reasonable for Defendants to perceive Plaintiff as a potential threat because he was refusing orders, he is serving a life sentence for homicide, and Plaintiff was a affiliated with a security threat group - the Gangster Disciples.  *See* Incident Investigation Report, Ex. D to Motion for Summary Judgment [71-5] at 14.

11

so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838.

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).  A prisoner is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. CIVA 403CV141WHBJCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

In support of their motion for summary judgment, Defendants submitted the affidavit of Ruth Saucier, a LPN employed at WCCF.  Nurse Saucier's sworn testimony reflects that she provided Plaintiff with medical treatment for his scratches on February 12, 2003.  *See* Ex. A to Motion [71-2].  She states that she offered Plaintiff other medical treatment, but he refused.  *Id.*

12

Nurse Saucier's sworn statement is supported by the Facility Emergency Flow Sheet for Plaintiff

on the date of the incident.  *See* Ex. B to Motion [71-3].  The sheet notes that Plaintiff refused to

let Nurse Saucier take his pulse or temperature.  It also notes that he had several red areas on his

face, stomach, and back, had a scratch on his eye and an abrasion on his forehead.  Nurse Saucier

documented that she cleansed Plaintiff's abrasions and scratches, but that he refused treatment of

any other kind.  *Id.*

       In Plaintiff's opposition to Defendants' motion for summary judgment, he claims that

after the alleged excessive force, he was taken to the sally port and asked Nurse Saucier to rinse

out his eyes.  He claims that she stated "they want (sic) let me."  *See* Response [96] at 7.  He also

claims that she refused to clean his cuts and abrasions.  He claims that he suffered from swollen

fingers, "severe headaches, intensive burning to his face, eyes, neck and chest, . . . [and] severe

eye problems and blurred vision in his right eye for weeks [after the attack]."  *Id*. at 10.  He

alleges that he later requested assistance from another nurse passing by his cell, and she gave him

pain medication and something to alleviate the burning of his skin.  *See* Declaration in

Opposition to Motion [97] at 5.

       Plaintiff has failed to establish that Defendants were deliberately indifferent to his serious

medical needs.  The record reflects that Nurse Saucier treated Plaintiff for his cuts and abrasions,

and that he refused all other treatment.  Further, even if Defendants did deny Plaintiff adequate

medical treatment, there is no evidence in the record that Plaintiff was exposed to a "substantial

risk of serious harm," and that Defendants were aware of such risk and disregarded it.  *See*

*Farmer*, 511 U.S. at 838; *see also Hernandez v. Velasquez*, 522 F.3d 556, 561(5th Cir. 2008)

(affirming summary judgment in favor of defendants on plaintiff's claim for deliberate

indifference, since plaintiff's alleged muscle atrophy, stiffness, loss of range of motion, and depression did not pose a substantial risk of serious harm).  Indeed, the video of Plaintiff being escorted out of his cell only reveals a red mark on Plaintiff's back, and the video of Plaintiff being escorted to his new cell after the alleged excessive force and the alleged denial of medical treatment reveals that Plaintiff had no visible injuries, and certainly was not at substantial risk of serious harm.  *See* Ex. E to Defendants' Motion for Summary Judgment [94].  Plaintiff also testified during his *Spears* hearing that he has no long term injuries of any type.  (Tr. 27-28.)

Additionally, even if Defendants did refuse to allow Plaintiff to rinse out his eyes, such refusal does not amount to deliberate indifference to a serious medical need.  As shown in the video of Plaintiff's cell during the lengthy time span that he refused to come to the tray hold and be restrained, Plaintiff wiped his eyes several times, and in fact, rinsed them on several occasions with water from the toilet.  *Id.*  Based on the foregoing, Plaintiff has failed to establish that Defendants were deliberately indifferent to his serious medical needs.

Denial of Access to the Courts[7]

Plaintiff alleges that he was denied access to the courts while he was incarcerated in WCCF, because he was refused assistance from the law library.  (Tr. 17-19.)  Specifically, he alleges that the law library failed to provide him with the prison policies on excessive force and chemical agents so that he could adequately state his claims.  *Id.*  Plaintiff testified that when he was transferred to Parchman, he was able to get the materials he needed, and that he was

---

[7]Although Defendants have not moved for summary judgment on this claim, the court is nevertheless authorized to address and dispose of this claim on its merits pursuant to 28 U.S.C. § 1915(e)(2). *See supra, Ali v. Higgs,* 892 F.2d 438, 440 (5th Cir. 1990).

ultimately able to bring his claim in this court.  (Tr. 19.)

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)); *Caraballo v. Fed. Bureau of Prisons*, 124 Fed. Appx. 284, 285 (5th Cir. 2005) (holding that because plaintiff had court-appointed counsel, he had no constitutional right of access to the law library to help prepare his defense, and therefore failed to state a claim upon which relief may be granted).  However, in order to state a constitutional violation, Plaintiff must show a "relevant actual injury" caused by the alleged denial of access to the law library.  *See Lewis v. Casey*, 518 U.S. 343, 349-52 (1996) (citation omitted) (stating that in order to prevail on an access-to-the-courts claim, plaintiff must show an "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim'"); s*ee also Donnelly v. Edwards*, 95 Fed. Appx. 702, 703 (5th Cir. 2004) (upholding dismissal of access-to-the-courts claim because plaintiff did not establish that he was unable to proceed in a court case as a result of alleged delays and denials of legal assistance); *Cartner v. Lowndes County*, 89 Fed. Appx. 439, 442 (5th Cir. 2004) (affirming dismissal of access-to-the-courts claim where plaintiff failed to explain "how his position as a litigant was adversely affected").

Plaintiff has failed to allege, much less demonstrate, how he was injured or prejudiced by the alleged denial of access to the courts.  Indeed, he testified that he was ultimately able to have his claims brought before the court.  (Tr. 19.)  Accordingly, Plaintiff has failed to state a claim

15

for a constitutional violation, and this claim should be dismissed pursuant to Section 1915 (e)(2).[8]  *See Dickerson v. Jordan*, 34 Fed. Appx. 962, No. 01-21106, 2002 WL 663719, at *1 (5th Cir. March 26, 2002) (affirming dismissal of claim for denial of access to courts pursuant to Section 1915(e)(2)(B) because plaintiff failed to allege an actual injury); *Morgan v. Goodwin*, 193 F.3d 1518, No. 98-21069, 1999 WL 706222, at *1 (5th Cir. Aug. 24, 1999) (affirming dismissal of claim for denial of access to courts pursuant to Section 1915(e)(2)(B) because plaintiff failed to prove that his legal position was prejudiced by the alleged violation; plaintiff failed to allege which claims he was prevented from presenting to the courts).

Deprivation of Property[9]

Plaintiff alleges that his radio/cassette player was taken by Officer Lewis at the direction of Officers Griffin and Collins, and that Defendants failed to return his property or issue him a property receipt.  (Tr. 16-17.)

It is well-established that neither negligent nor intentional deprivations of property violate due process where there is an adequate state tort remedy available.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Numerous Fifth Circuit cases have upheld dismissal of prisoners' suits for property deprivation because of the availability of state law remedies.  *See*, *e.g.*, *Myers v. Klevenhage*, 97 F.3d 91, 94-95 (5th Cir. 1996) (*per curiam*); *Murphy v. J.A. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d

---

[8]Further, Plaintiff's claim for denial of access to the courts is not alleged against any specific Defendant.  Therefore, it unclear whether such claim is even alleged against any of the remaining Defendants before the court.

[9]*See supra*, footnote 7.

16

761, 763-64 (5th Cir. 1984).  Mississippi provides post-deprivation remedies for both negligent and intentional conversions of property.  *See, e.g.*, Miss. Code Ann. § 11-38-1 *et seq.* (claim and delivery); Miss. Code Ann. § 11-37-101 *et seq.* (replevin).  It is Plaintiff's burden to establish that these post-deprivation remedies are not adequate.  *Myers*, 97 F.3d at 94-95 (citations omitted).  Plaintiff has failed to allege, must less provide any evidence, that these remedies are not adequate.  Moreover, the Fifth Circuit has held that "Mississippi's post-deprivation remedies for civil IFP litigants satisfy due process."  *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994).  Thus, Plaintiff's remedy lies not in a Section 1983 action, but in a tort claim under state law.

Accordingly, Plaintiff has failed to state a claim for which relief can be granted, and this claim should be dismissed pursuant to Section 1915(e)(2).

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motions for Summary Judgment [71] [94] on Plaintiff's claims for excessive force and the denial of adequate medical treatment are GRANTED, and that Plaintiff's claims for denial of access to the courts and property deprivation are dismissed pursuant to 28 U.S.C. § 1915(e)(2).  Accordingly, all of Plaintiff's claims are hereby dismissed with prejudice.  This dismissal shall count as a strike for purposes of 28 U.S.C. § 1915(g).  *See Carson v. Holton*, No. 06-11254, 2007 WL 2051969, at *1 (5th Cir. July 18, 2007).

A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 14th day of July, 2008.

s/ Michael T. Parker
United States Magistrate Judge

17